ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br><br>v.<br><br><br><br>ÁNGEL LUIS PAGÁN MERCADO<br><br>Peticionario | KLCE202400455 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>CRIM. NÚM.:<br>DVI2024G0001<br>DLA2024G0007<br>DFJ2024G0001<br><br>Sobre:<br>Art. 93 (A) CP<br>Art. 285 CP<br>Art. 6.14 LA |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de octubre de 2024.

Comparece la parte peticionaria, el Sr. Ángel Luis Pagán Mercado (señor Pagán Mercado) mediante el presente recurso de *certiorari*. Solicita que revoquemos la *Resolución* dictada y notificada por el Tribunal de Primera Instancia, Sala de Bayamón (TPI), el 25 de marzo de 2024. En su dictamen, el TPI declaró "No ha lugar" la *Moción de desestimación al amparo de la Regla 64 (p) de Procedimiento Criminal por ausencia total de prueba y por violación al debido proceso de ley constitucional* instada por el peticionario.

Anticipamos la denegación a la expedición del auto de *certiorari*.

## I.

Por hechos presuntamente acontecidos el 8 de noviembre de 2021, El Pueblo de Puerto Rico presentó tres denuncias contra el peticionario por el delito de asesinato en primer grado de Wilson

Perales Serrano,[1] destrucción de prueba,[2] en alusión al vehículo de motor del occiso, con éste en su interior, y por apuntar o disparar un arma de fuego que ocasionó la muerte de la víctima.[3] Inicialmente, el 27 de enero de 2023, el TPI determinó no causa para acusar, por virtud de la Regla 23 de Procedimiento Criminal, *infra.*[4] Continuado el trámite procesal correspondiente, el 12 de enero de 2024, en alzada, el TPI sí encontró causa probable en contra del peticionario. El día 18 siguiente, se celebró la lectura de la trilogía de acusaciones.[5] Allí, a través de su representante legal invocó las reglas procesales para hacer su alegación.[6]

Así rezan las acusaciones:

> El referido imputado, Ángel Luis Pagán Mercado, allí y entonces en fecha del 8 de noviembre de 2021, alrededor de las 5:25 am y en la calle Ramón Sobrino, Sector las Piñas Bo. Algarrobo, Vega Baja que forma parte de la jurisdicción del Tribunal de Primera Instancia, sala de Bayamón, ilegal, a propósito, con conocimiento y con la intención criminal, [...]

> **DVI2024G0001**[7]
>
> [...] le dio muerte al ser humano WILSON PERALES SERRANO CON INTENCIÓN DE CAUSARSELA, CONSISTENTE en que utilizando su arma de fuego le disparó ocasionándole la muerte.

> **DLA2024G0007**[8]
>
> [...] APUNTÓ Y DISPARÓ con su arma de fuego a WILSON PERALES SERRANO, sin ser este un caso de legítima defensa y sin causa legal que le justificara, ocasionando la muerte de la víctima.

> **DFJ2024G0001**[9]
>
> [...] a sabiendas de que es una prueba que pudiera utilizarse en cualquier investigación, procedimiento, vista, asunto judicial, administrativo o cualquier otro trámite autorizado por ley, la destruyó o escondió con el propósito de evitar su presentación, consistente en que incendió el vehículo de Motor Marca Honda, Modelo, Accord, Color Negro, Año 2000, Tablilla GVY-715 con la víctima en el interior del mismo. Dicho

---

[1] Apéndice, págs. 25-26.
[2] Apéndice, págs. 29-30.
[3] Apéndice, págs. 27-28.
[4] Apéndice, págs. 22-24.
[5] Apéndice, págs. 16-21.
[6] Grabación de la vista *Lectura de Acusación*, de 18 de enero de 2024, 1:00.
[7] Apéndice, págs. 16-17.
[8] Apéndice, págs. 18-19.
[9] Apéndice, págs. 20-21.

vehículo pertenece a la víctima Wilson Perales Serrano, esto en violación al Artículo 285 del Código Penal de Puerto Rico.

Así las cosas, el 14 de febrero de 2024, el señor Pagán Mercado peticionó la desestimación de las acusaciones, al amparo de la Regla 64 (p) de Procedimiento Criminal, *infra.*[10] Esencialmente alegó la ausencia total de prueba sobre los elementos de los delitos imputados y la violación de su debido proceso de ley. En respuesta, El Pueblo de Puerto Rico interpuso su oposición.[11] En síntesis, aludió a la prueba testifical y pericial desfilada en el proceso preliminar, sobre la cual sostuvo se derrotaba las contenciones del peticionario.

Ponderados los planteamientos, el 25 de marzo de 2024, el TPI notificó la *Resolución* aquí recurrida, en la que esbozó los siguientes hechos:[12]

1. El acusado es sargento bombero.

2. Previo a los hechos del caso, el acusado amenazó de muerte a la víctima con un arma de fuego y que el arma de fuego tenía "laser".

3. En el vehículo quemado, donde fue encontrado el occiso, se ocupó un fragmento de proyectil debajo del asiento del conductor.

4. El fragmento de proyectil se sometió para análisis en el Instituto de Ciencias Forenses con la determinación de que el mismo es calibre .40.

5. El acusado tiene licencia de armas y a su nombre aparecen registradas dos Glock calibre .40 modelo 23 y una Glock calibre .10 modelo 20.

6. Una de las armas registradas a nombre del acusado fue hurtada.

7. Las otras dos armas fueron ocupadas por la policía mediante orden de allanamiento.

8. El día en que se ocuparon las armas registradas a nombre del acusado, una de ellas tenía puesto el dispositivo de infrarrojo, el cual se removió y entregó al acusado.

---

[10] Apéndice, págs. 9-15 (incompleto).
[11] Apéndice, págs. 5-8.
[12] Apéndice, págs. 1-4.

9. Las armas ocupadas se sometieron a análisis en el Instituto de Ciencias Forenses.

10. Del análisis realizado a las armas ocupadas y al fragmento de proyectil se determinó que dicho fragmento fue disparado por una de las armas ocupadas al acusado.

11. La víctima estaba muerta cuando lo quemaron.

12. La patóloga forense no puede determinar causa exacta de la muerte.

13. La patóloga forense no puede descartar que la víctima haya muerto a causa de disparo.

Al tenor de los enunciados citados y la prueba desfilada en la vista preliminar en alzada, el TPI concluyó que los elementos de los delitos de asesinato, armas y destrucción de evidencia estaban presentes y eran suficientes, a la luz de la etapa procesal, para establecer que existía causa probable para creer que el acusado cometió los tres delitos.

Inconforme con la determinación, el 22 de abril de 2024, el peticionario acudió ante nos mediante el presente recurso de *certiorari*, en el que señaló la comisión de los siguientes errores:

**PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, AL ENTENDER QUE SE HABÍA CUMPLIDO CON LO DISPUESTO EN LA REGLA 23 DE LAS DE PROCEDIMIENTO CRIMINAL, CUANDO EL MINISTERIO PÚBLICO NO DESFILÓ PRUEBA ALGUNA DE QUE EL SR. PAGÁN MERCADO DISPARÓ CON SU ARMA DE FUEGO A WILSON PERALES SERRANO.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, AL ENTENDER QUE SE HABIA CUMPLIDO CON LO DISPUESTO EN LA REGLA 23 DE LAS DE PROCEDIMIENTO CRIMINAL, CUANDO EL MINISTERIO PÚBLICO NO DESFILÓ PRUEBA ALGUNA DE QUE EL SR. WILSON PERALES SERRANO MURIÓ COMO CONSECUENCIA DE UN DISPARO.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE

DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, AL ENTENDER QUE SE HABÍA CUMPLIDO CON LO DISPUESTO EN LA REGLA 23 DE LAS DE PROCEDIMIENTO CRIMINAL, CUANDO EL MINISTERIO PÚBLICO NO DESFILÓ PRUEBA ALGUNA DE QUE EL SR. PAGÁN MERCADO INCENDIÓ EL VEHÍCULO DE MOTOR MARCA HONDA, MODELO, ACCORD, COLOR NEGRO, ANO 2000, TABLILLA GVY-715 CON LA VICTIMA EN EL INTERIOR DEL MISMO.

**CUARTO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMON, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, AL ENTENDER QUE SE HABÍA CUMPLIDO CON LO DISPUESTO EN LA REGLA 23 DE LAS DE PROCEDIMIENTO CRIMINAL, CUANDO LA PROPIA PRUEBA DEL MINISTERIO PÚBLICO ESTABLECE QUE NO SE PUEDE CONCLUIR QUE WILSON PERALES SERRANO MURIÓ COMO CONSECUENCIA DE UN DISPARO.

**QUINTO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, CUANDO NO SE PUEDE CONCLUIR LA CAUSA DE LA MUERTE DEL SR. WILSON PERALES SERRANO.

**SEXTO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, CUANDO DE LA PROPIA PRUEBA DEL MINISTERIO PÚBLICO DESFILÓ QUE NO SE PUEDE CONCLUIR LA CAUSA DE LA MUERTE DEL SR. WILSON PERALES SERRANO.

**SÉPTIMO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, A PESAR DE QUE PARA LA DETERMINACIÓN DE CAUSA FUE ADMITIDA EVIDENCIA INADMISIBLE EN EL JUICIO.

**OCTAVO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL, CUANDO LA DETERMINACIÓN DE CAUSA ESTUVO BASADA EN CRITERIOS DE POSIBILIDADES Y NO PROBABILIDADES.

**NOVENO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA CRIMINAL DE BAYAMÓN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64(P) DE

LAS DE PROCEDIMIENTO CRIMINAL, Y SOMETER AL SR. PAGÁN MERCADO ARBITRARIA E INJUSTIFICADAMENTE A LOS RIGORES DE UN PROCEDIMIENTO CRIMINAL POR UN DELITO GRAVE. *PUEBLO V. NEGRÓN NAZARIO*, 191 DPR 720, 732 (2014).

En cumplimiento de nuestra *Resolución* de 23 de mayo de 2024, el TPI envió el enlace de las audiencias celebradas de la vista preliminar en alzada que nos ocupa; a saber: 23 de marzo de 2023 (23:32), 5 (17:39) y **10 de mayo de 2023** (2:00:15, transcrita), 28 (1:33:22) y **29 de agosto de 2023** (2:14:37, transcrita), 29 de noviembre de 2023 (6:42), 4 (2:10:21), 5 (1:25:51) y 21 de diciembre de 2023 (1:50) y **12 de enero de 2024** (2:01:10, transcrita). Luego de varias incidencias procesales, el 9 de agosto de 2024, acogimos la Transcripción de la Prueba Oral (TPO) estipulada de las vistas antes indicadas.[13] El peticionario optó por no presentar un alegato suplementario. Por su parte, el 30 de septiembre de 2024, El Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, instó el *Alegato de El Pueblo*. Con el beneficio de ambas comparecencias, resolvemos.

## II.

## A.

El auto de *certiorari* es un vehículo procesal de naturaleza discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró, supra*, que cita a *Pueblo v. Ortega*

---

[13] Es decir, el peticionario sometió la TPO de tres de las diez audiencias celebradas: 10 de mayo de 2023, el 29 de agosto de 2023 y el 12 de enero de 2024.

*Santiago*, 125 DPR 203, 211 (1990). Así, pues, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera…" *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra,* págs. 334-335.

En cuanto a este foro revisor, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra,* pág. 335; *Pueblo v. Ortega Santiago, supra.*

En virtud de lo anterior, para ejercer sabia y prudentemente nuestra facultad discrecional, al determinar si expedimos o denegamos un recurso de *certiorari* interlocutorio de materia criminal, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

**(i)**

De acuerdo con nuestro esquema constitucional, toda persona tiene derecho a un debido proceso de ley como condición previa a ser privado de su libertad. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1, ed. 2023. Cónsono con lo anterior, toda persona imputada de un delito grave tiene un derecho estatutario para la celebración de una vista preliminar antes de ser sometido a los rigores de un juicio. En este proceso, el tribunal celebra una audiencia adversarial preliminar para hacer una determinación de causa probable, tomando en cuenta la admisibilidad en el juicio de la evidencia presentada por el Ministerio Público sobre dos asuntos esenciales: (1) la comisión del delito grave y (2) su conexión con el imputado. Ahora bien, el Ministerio Público no está obligado a presentar toda la prueba de cargo que desfilará en el juicio. los elementos del delito y la conexión de la persona imputada con el delito. *Pueblo v. Pérez Delgado*, 211 DPR 654, 664 (2023); véase, además, Regla 23 (c) de Proc. Criminal, 34 LPRA Ap. II. A esos efectos, la determinación de causa probable en el procedimiento de vista preliminar constituye la autorización al Pueblo de Puerto Rico para que presente las acusaciones correspondientes. *Pueblo v. Nieves Cabán*, 201 DPR 853, 864 (2019); *Pueblo v. Negrón Nazario*, 191 DPR 720, 732 (2014); *Pueblo v. Rivera Vázquez*, 177 DPR 868, 876 (2010).

Ahora bien, el Tribunal Supremo de Puerto ha expresado que el proceso de causa probable para acusar no supone la celebración de un mini juicio. *Pueblo v. Rivera Cuevas*, 181 DPR 699, 706 (2011).

Esto, porque en la vista preliminar no se establece la culpabilidad del imputado más allá de duda razonable, sino la constatación de que El Pueblo de Puerto Rico cuenta con una adecuada justificación para continuar con un proceso judicial más extenso y profundo. *Pueblo v. Negrón Nazario, supra*, pág. 733. Es decir, la vista preliminar opera en términos de probabilidades. *Pueblo v. Pérez Delgado, supra*, pág. 665. Específicamente, en esta etapa de los procedimientos, la responsabilidad probatoria de El Pueblo de Puerto Rico es presentar una *scintilla* de evidencia que dé paso a una determinación *prima facie* sobre los dos aspectos antes mencionados. "Una vez el Ministerio Público logre cumplir con esta carga probatoria, el magistrado que presida la vista deberá determinar causa probable por el delito imputado". *Pueblo v. Pérez Delgado, supra*, pág. 665. Asimismo, la determinación de causa probable para acusar goza de una presunción legal de corrección. *Pueblo v. Rivera Vázquez, supra*, pág. 878.

Con relación al caso de autos, en aquellas instancias en que el juzgador no encuentre causa probable en la vista preliminar, el ordenamiento procesal criminal provee al Pueblo de Puerto Rico la oportunidad de solicitar una vista preliminar en alzada, por virtud de la Regla 24 (c) de Procedimiento Criminal.

. . . . . . . .

> (c) Efectos de la determinación de no haber causa probable. — Si luego de la vista preliminar, en los casos en que corresponda celebrar la misma, el magistrado hiciere una determinación de que no existe causa probable, el fiscal no podrá presentar acusación alguna. En tal caso o cuando la determinación fuere la de que existe causa por un delito inferior al imputado, el fiscal podrá someter el asunto de nuevo con la misma o con otra prueba a un magistrado de categoría superior del Tribunal de Primera Instancia. 34 LPRA Ap. II, R. 24 (c).

. . . . . . .

Es decir, en los casos en que El Pueblo de Puerto Rico no obtiene una determinación de causa probable en la vista preliminar, el Ministerio Público debe elegir uno de dos cursos de acción, a

saber: (1) desistir de procesar al individuo o (2) recurrir ante otro magistrado con la misma prueba o con una prueba distinta para celebrar una segunda vista preliminar. *Pueblo v. Figueroa et al.*, 200 DPR 14, 21-22 (2018), que cita a *Pueblo v. Rivera Vázquez*, 177 DPR 868, 876 (2010). Es esta última opción la que la Regla 24(c) de Procedimiento Criminal, *supra*, provee y la cual es conocida como *vista preliminar en alzada*. Huelga aclarar que esta vista no es un trámite apelativo del primer procedimiento, sino una vista de *novo* o un proceso independiente, separado y distinto. *Pueblo v. Figueroa, supra*, pág. 22; *Pueblo v. Rivera Vázquez, supra*, pág. 877; *Pueblo v. Félix Avilés*, 128 DPR 468, 476 (1991); *Pueblo v. Cruz Justiniano*, 116 DPR 28, 30 (1984). Por lo tanto, se considera como "una segunda oportunidad para obtener la autorización para acusar por el delito que estima ha quedado configurado". *Pueblo v. García Saldaña*, 151 DPR 783, 790 (2000), reiterado en *Pueblo v. Figueroa, supra*, pág. 22. Así, en la vista preliminar en alzada, el Ministerio Público puede presentar la misma prueba desfilada en la vista preliminar u otra prueba con el propósito de conseguir una determinación favorable de causa probable por el delito por el cual ha pretendido acusar. *Pueblo v. Figueroa, supra*, pág. 22; *Pueblo v. Ríos Alonso*, 149 DPR 761, 769 (1999).

**(ii)**

De otra parte, realizado el pronunciamiento de causa probable para acusar y emitido el pliego acusatorio, el imputado puede solicitar su desestimación al amparo de la Regla 64 de Procedimiento Criminal, 34 LPRA Ap. II, R. 64. En lo pertinente, el inciso (p) de la Regla 64 de Procedimiento Criminal, *supra*, dispone lo que sigue:

> La moción para desestimar la acusación o denuncia, o cualquier cargo de las mismas sólo podrá basarse en uno o más de los siguientes fundamentos:
>
> .        .        .        .        .        .        .        .

(p) Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho. 34 LPRA Ap. II, R. 64 (p).

Según se desprende de la norma citada, se pueden invocar dos fundamentos para desestimar la acusación: (1) insuficiencia de prueba; o (2) cuando se haya violado algún derecho procesal que se tenía que garantizar en la vista correspondiente. *Pueblo v. Negrón Nazario, supra*, pág. 735; *Pueblo v. Rivera Vázquez, supra*, pág. 878. En cuanto al primer fundamento, éste procede únicamente si se determina que hay ausencia total de prueba, ya sea porque no se presentó evidencia sobre algún elemento del delito o porque no se demostró la conexión del acusado con el delito. *Pueblo v. Negrón Nazario, supra*, pág. 736. Con relación al segundo fundamento, el tribunal debe evaluar si el proceso impugnado se hizo conforme a la ley y los preceptos constitucionales, de manera que se hayan brindado las garantías procesales correspondientes. *Pueblo v. Rivera Vázquez, supra*, pág. 879. El tribunal podrá, en el ejercicio de su discreción, señalar una vista evidenciaria, pero si del contenido de la moción y de la evidencia contenida en el expediente del caso se desprende que no procede el planteamiento de ausencia total de prueba, el tribunal podrá denegarla de plano. *Pueblo v. Cruz Bayona*, 124 DPR 568, 573 (1989); *Pueblo v. González Pagán, supra*, pág. 687. En ese sentido, al evaluar una moción de desestimación al amparo de la Regla 64 (p) de Procedimiento Criminal, *supra*, el juzgador debe estar guiado por los siguientes criterios:

(1) examinar la prueba de cargo y defensa vertidas en la vista preliminar, así como la prueba del acusado en apoyo de la moción; (2) determinar si esa prueba establece la probabilidad de que estén presentes todos los elementos del delito, así como la existencia de prueba que conecte al imputado con su comisión; (3) el hecho de que a juicio del magistrado la prueba presentada demuestre con igual probabilidad la comisión de un delito distinto al imputado, no debe dar base a una desestimación, y (4) sólo en ausencia total

de prueba sobre la probabilidad de que estén presentes y probados uno o varios elementos del delito o de la conexión del imputado con tal delito, procede la desestimación de la acusación. *Pueblo v. Pérez Delgado, supra,* pág. 667.

### III.

En su recurso de *certiorari*, el señor Pagán Mercado plantea, en esencia, que las acusaciones en su contra deben ser desestimadas, toda vez que existe ausencia total de prueba. En particular, afirma que la evidencia desfilada por El Pueblo de Puerto Rico no probó la trilogía de delitos imputados, ya que no se puede concluir que la causa de la muerte de la víctima fue un disparo. Aduce también que su derecho a un debido proceso de ley fue infringido al presentarse prueba inadmisible, en alusión al testimonio de la hermana del occiso y las confidencias recibidas durante la investigación, al tildarlas de prueba de referencia múltiple. Por lo dicho, el peticionario arguye que el TPI incidió al negarse a desestimar las acusaciones en su contra y someterlo a los rigores de un juicio criminal a base de posibilidades y no de probabilidades.

Por su parte, El Pueblo de Puerto Rico riposta las contenciones y asevera que, en alzada, evidenció la probabilidad de la comisión de los delitos imputados. Indica que la evidencia ofrecida anula la ausencia total de prueba argüida. Apunta que ante una alegación de ausencia total de prueba, el peso recae en la parte promovente y asegura que el peticionario no rebatió la presunción de corrección de la determinación de causa probable para acusar.

Como cuestión de umbral, de conformidad con los delitos imputados, El Pueblo de Puerto Rico estaba compelido a demostrar la probabilidad de que el señor Pagán Mercado, a propósito, con

conocimiento o temerariamente,[14] disparó su arma de fuego[15] y causó la muerte del señor Wilson Perales Serrano.[16] Posteriormente, incendió el vehículo de motor de color negro, marca Honda, modelo Accord de 2000, y con matrícula GVY-715 con la víctima en el interior.[17] Para ello, El Pueblo de Puerto Rico presentó el testimonio de los siguientes declarantes: la Sra. Jennifer Perales (señora Perales), el Agte. Carlos Rivera Gerena (agente Rivera Gerena), la Dra. Rosa Rodríguez Castillo (doctora Rodríguez Castillo), patóloga en el Instituto de Ciencias Forenses, y la examinadora de armas de fuego, Jackeline Berríos Rivera (señora Berríos Rivera). Veamos.

En consideración con las determinaciones de hechos 1 y 2 acogidas por el TPI, la señora Perales testificó que conocía al occiso porque era su hermano.[18] Además, identificó al peticionario

---

[14] El Artículo 22 del Código Penal de 2012, 33 LPRA sec. 5035, define los siguientes elementos subjetivos del delito:

(1) *A propósito*
(a) con relación a un resultado, una persona actúa "a propósito" cuando su objetivo consciente es la producción de dicho resultado.
(b) con relación a una circunstancia, una persona actúa "a propósito" cuando la persona cree que la circunstancia existe.
(2) *Con conocimiento*
(a) con relación a un resultado, una persona actúa "con conocimiento" cuando está consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta.
(b) con relación a un elemento de circunstancia, una persona actúa "con conocimiento" cuando está consciente de que la existencia de la circunstancia es prácticamente segura.
(3) *Temerariamente*
Una persona actúa temerariamente cuando está consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado o la circunstancia prohibida por ley.

[15] Artículo 6.14 de la Ley de Armas de 2020, 25 LPRA sec. 466m:
Incurrirá en delito grave con pena de reclusión por un término fijo de cinco (5) años, toda persona que, salvo en casos de legítima defensa, propia o de terceros, o de actuaciones en el legítimo desempeño de funciones oficiales o actividades legítimas de deportes:
(a) voluntariamente dispare cualquier arma de fuego fuera de los lugares autorizados por esta Ley, [...] o;
(b) intencionalmente apunte hacia alguna persona con un arma de fuego, [...].

[16] Artículo 93 (A) del Código Penal de Puerto Rico, 33 LPRA sec. 5142:
Constituye asesinato en primer grado:
(a) Todo asesinato perpetrado por medio de veneno, acecho, tortura, o a propósito o con conocimiento.

[17] Artículo 285 del Código Penal de Puerto Rico, 33 LPRA sec. 5378:
Toda persona que sabiendo que alguna prueba documental o cualquier objeto pudiera presentarse en cualquier investigación, procedimiento, vista o asunto judicial, legislativo o administrativo, o cualesquiera otros trámites autorizados por ley, la destruya o esconda con el propósito de impedir su presentación, será sancionada con pena de reclusión por un término fijo de tres (3) años. [...]

[18] Transcripción de la Prueba Oral (TPO) de 10 de mayo de 2023, págs. 35 líneas 7-11; 67 líneas 23-25.

"[p]orque [era] del barrio", a quien conoce desde hace alrededor de 25 años.[19] La señora Perales atestiguó que allá para el 29 de octubre de 2021,[20] le preguntó a su hermano qué le sucedía porque lo vio triste.[21]

P. [...] Descríbalo cómo usted lo ve.

R. Triste, con la carita de él y le pregunté que qué le sucedía y él me dice que fue que es que él había ido a casa el día, la noche antes y dio, como yo no estaba, pues que dio la vuelta. Cuando él dio la vuelta se paró en un negocio que le dicen Orama y que él se bajó porque estaban los del barrio allí, y que cuando al ratito él se mira y él ve un láser que lo están señalando y que él dijo que "ah pues es que", fue a donde la persona y que le preguntó que porqué lo estaba alumbrando con el láser y él le dijo que lo iba a matar porque le tenía ganas y pensó él se le había metido en la casa a robar.

P. Y le indicó así mismo, que fue a donde la persona.

R. Sí, y él le dijo "Ah, yo te voy a matar porque tú te metiste a casa a robar". Y yo le pregunté "Ah, pero ¿eso es cierto?" Y el "No", que para ese tiempo pues él estaba confinado.[22]

El incidente ocurrió la noche anterior.[23] Acorde a su testimonio, la víctima se refirió al peticionario como "el bombero".[24] Ésta identificó al imputado en Sala.[25]

P. ¿Y usted indicó que él se acercó a qué persona?

R. A Ángel Pagán.

P. ¿Cómo fue que él le dijo a usted?

R. El bombero.

P. ¿Y cómo se conoce a Ángel Pagán?

R. ¿Cómo es?

P. ¿Cómo se le conoce a Ángel Pagán en donde usted vive?

R. Como el bombero.[26]

---

[19] TPO de 10 de mayo de 2023, pág. 35 líneas 12-17.
[20] TPO de 10 de mayo de 2023, págs. 35 líneas 18-19; 68 líneas 8-12.
[21] TPO de 10 de mayo de 2023, pág. 55 líneas 1-24.
[22] TPO de 10 de mayo de 2023, pág. 56 líneas 3-19.
[23] TPO de 10 de mayo de 2023, pág. 79 líneas 3-5, 17-21.
[24] TPO de 10 de mayo de 2023, págs. 113 líneas 15-25; 114 línea 5.
[25] TPO de 10 de mayo de 2023, pág. 59 líneas 9-14.
[26] TPO de 10 de mayo de 2023, págs. 58 líneas 22-25; 59 líneas 1-5.

El TPI admitió el testimonio y le confirió la credibilidad y el valor probatorio que estimó pertinente; y dio paso al contrainterrogatorio.[27]

Durante el contrainterrogatorio, la testigo admitió que no compartió esta información ni acudió a la Policía para denunciarlo. Luego, dijo que informó al agente Rivera Gerena[28] y al Ministerio Público en 2023, en ocasión de la vista preliminar.[29] A preguntas de la Defensa, la señora Perales negó haber hecho alusión a alguna arma blanca ni de fuego.[30] Es decir, en el redirecto, la señora Perales declaró que, acorde con las expresiones del occiso el 29 de octubre de 2021, el señor Pagán Mercado, conocido como el bombero, lo apuntó con un láser.[31] Sobre este testimonio, la testigo no prestó una declaración jurada.[32]

En cuanto al agente Rivera Gerena, la Transcripción de la Prueba Oral presentada no incluyó la audiencia de la vista preliminar en alzada celebrada el 28 de agosto de 2023, con una duración de hora y media aproximadamente, cuando comenzó a testificar el funcionario del orden público; ni la de 4 de diciembre de 2023, en la que culminó su testimonio.

En la continuación de su testimonio de 29 de agosto de 2023, el agente Rivera Gerena y a base de las determinaciones de hechos 3, 4, 5, 6, 7 y 8 formuladas por el TPI, el funcionario atestiguó que, luego de recibir una confidencia, verificó que el peticionario contaba con una licencia de armas.[33] Además, tramitado un *subpoena,* corroboró que el peticionario estuvo libre el día de los hechos.[34]

---

[27] TPO de 10 de mayo de 2023, págs. 65 líneas 4-6, 21-23; 66 líneas 10-11, 14-16.
[28] TPO de 10 de mayo de 2023, pág. 111 líneas 12-22.
[29] TPO de 10 de mayo de 2023, págs. 68 líneas 13-24; 69 líneas 16-22; 70 líneas 20-25.
[30] TPO de 10 de mayo de 2023, pág. 80 líneas 7-13, 20-23.
[31] TPO de 10 de mayo de 2023, pág. 105 líneas 9-18.
[32] TPO de 10 de mayo de 2023, pág. 108 líneas 17-25.
[33] TPO de 29 de agosto de 2023, pág. 20 líneas 9-14.
[34] TPO de 29 de agosto de 2023, pág. 50 líneas 2-8.

El 29 de agosto de 2023, el agente Rivera Gerena declaró que se recuperó un proyectil disparado de arma de fuego dentro del vehículo incendiado.[35] La pieza de evidencia fue embalada y enviada a analizar.[36] El resultado fue que el proyectil era de calibre .40.[37] Entre las armas en posesión del peticionario, consta una Glock Modelo 23 calibre .40 y otra Glock Modelo 20 calibre 10mm.[38] Otra arma registrada a nombre del señor Pagán Mercado fue hurtada.[39] Entonces, el agente Rivera Gerena solicitó una orden de registro y allanamiento, por virtud de la cual ocupó las armas del peticionario.[40] El arma de fuego marca Glock, con el número de serie AAEQ305, tenía un aditamento externo, el cual se removió y se le entregó al peticionario.[41]

Por otro lado, con relación a los enunciados fácticos 9 y 10, la examinadora de armas de fuego del Instituto de Ciencias Forenses, la señora Berríos Rivera[42] testificó que examinó el fragmento de proyectil (AF21-1579) y dos armas marca Glock, una de calibre .40 y otra de calibre 10 milímetros (AF21-1730).[43] Al respecto, declaró:

P. Testigo, usted declaró que examinó el AF21-1579.

R. Correcto.

P. Le hago entrega del Exhibit Catorce.

R. Gracias.

P. Lo examina y cuando tenga, lo haya visto me deja saber por favor.

R. Sí.

P. ¿Quién certifica ese exhibit?

R. Yo.

P. ¿Cuál fue su función o su trabajo realizado en ese análisis?

R. Realicé un examen de proyectiles y de sus derivados, y un examen microscópico.

---

[35] TPO de 29 de agosto de 2023, pág. 67 líneas 1-10, 20-22.
[36] TPO de 29 de agosto de 2023, pág. 68 líneas 14-12.
[37] TPO de 29 de agosto de 2023, pág. 70 líneas 1-4.
[38] TPO de 29 de agosto de 2023, pág. 77 líneas 10-16.
[39] TPO de 29 de agosto de 2023, pág. 85 líneas 7-13.
[40] TPO de 29 de agosto de 2023, págs. 83-85.
[41] TPO de 29 de agosto de 2023, pág. 100.
[42] TPO de 29 de agosto de 2023, pág. 6 líneas 7-15.
[43] TPO de 29 de agosto de 2023, pág. 7 líneas 12-16.

P. ¿De qué consta el examen de proyectil y sus derivados?

R. El examen de proyectil y de sus derivados es el examen que se le hace a todos los proyectiles y a sus derivados donde se describe el tipo de proyectil, el peso, el diámetro, la combinación de ese proyectil, entiéndase lo que se compone, y la forma en que está el proyectil.

P. ¿Cuál fue su conclusión de ese examen?

R. Que el fragmento de proyectil de bala marcado "El", correspondiente a la pieza 007 del caso AF21-1579, es calibre punto cuarenta, *slash* diez milímetros, con estriación hacia la derecha y fue disparado por un arma de fuego.

P. ¿Por qué usted describe, punto cuarenta *slash* diez milímetros?

R. Porque tanto el calibre punto cuarenta como el calibre diez milímetros tienen el mismo diámetro. En cuestión del diámetro es lo mismo. Y científicamente, al momento de yo realizar esta examinación de este proyectil, no puedo descartar ese calibre.

P. Permiso para acercarme a la testigo, Vuestro Honor. Le hago entrega del Exhibit Quince. Le pregunto, ¿cuál fue su participación en el Exhibit Quince, en esa certificación, ese examen?

R. Yo realicé un examen de estudio pericial a unas armas que fueron sometidas marca Glock, calibre, una [pistola] punto cuarenta y una [pistola] calibre diez milímetro[s].

P. ¿Tiene conocimiento de quién sometió esas armas?

R. La sometió el agente Carlos Rivera Gerena de la División de Homicidios de Vega Baja.

P. Okay. Y, ¿en qué consta el examen que usted realizó de esas armas?

R. Realicé un estudio pericial que es el examen físico de las armas de fuego, donde yo describo marca, modelo, color, calibre, la forma en cuanto, verdad, cómo esas armas están físicamente, los seguros, el funcionamiento. Y entiéndase que el funcionamiento es que si está en su condición que el fabricante la fabricó, o si estuviese en automático.

P. ¿Cuál fue su conclusión para el funcionamiento de esa arma?

R. Que la pistola descrita en la pieza 010 del caso AF21-1730, es capaz de disparar; y...

P. Le pregunto, ¿cómo usted comprueba o corrobora, cuál es el examen que usted realiza para saber si es capaz de disparar?

R. Una vez yo hago las hojas de trabajo de esas armas de fuego, posterior a eso tenemos que obtener unos disparos de prueba para determinar si son capaces de disparar. Y posterior, si se solicita una comparación se utilizan los disparos de prueba para comparar.

P. ¿Y en este caso se solicitó una comparación?

R. Correcto.

P. ¿Con qué?

R. Con el fragmento de proyectil de bala del caso AF21-1579.[44]

.    .    .    .    .    .    .    .    .

P. ¿Reconoce usted la identificación ocho dos a la ocho seis? ¿La reconoce usted?

R. Sí.

P. ¿Por qué usted la reconoce?

R. En este caso todos los sobres están sellados, con, en este caso el sello oficial para ese momento que tenía, que me autoriza el Instituto para certificar. En adición a eso tiene mi firma bajo cada sello. Y este documento yo lo preparé como parte de la examinación el cual también tiene mi firma.

P. ¿Cómo comparan esos documentos que contienen su firma y el sello con lo que usted selló?

R. Son los mismos.[45]

.    .    .    .    .    .    .    .    .

P. ¿Cuáles son las partes, o qué parte de bala es eso que usted tiene en el exhibit?

R. En este caso es un fragmento de proyectil pero sería lo que es correspondiente a un proyectil.

P. ¿Por qué se llama fragmento de proyectil?

R. Se llama fragmento de proyectil cuando esa pieza pierde parte de lo que es su totalidad. Por lo tanto deja de ser un, una pieza completa, ya se fragmenta.

P. Y en ese caso ¿qué perdió?

R. Perdió parte del plomo.

P. Okay. ¿Referente a una bala qué parte es el proyectil? Si le puede ilustrar a la Honorable Juez.

R. Si me permiten puedo, tengo un *dummy* que puedo...

JUEZ - HON. MARÍA Z. TRIGO FERRAIUOLI: Sí.

R. Esto es lo sería una munición en todas sus partes, porque tiene proyectil, casquillo, tiene un fulminante, que es esta parte de aquí, y dentro de ese casquillo va a contener o que es la pólvora. Cuando las municiones se utilizan y se disparan, el proyectil va a pasar por el cañón y se va a salir de ese casquillo y se van a convertir en componentes de bala. Entonces el proyectil ya sería lo que es solito, que es lo que pasa a través de ese cañón que es lo que llega al cuerpo, a los carros. Y los casquillos normalmente son los que caen del arma de fuego y quedan en el piso.

P. Okay. Cuando usted indica que examinó las armas en comparación con el fragmento de proyectil, ¿cuál fue su trabajo en referente a ese asunto?

R. Realicé una comparación microscópica entre el fragmento de proyectil y unos disparos de prueba que yo obtuve.

---

[44] TPO de 12 de enero de 2024, págs. 9-11.
[45] TPO de 12 de enero de 2024, pág. 12 líneas 10-21.

P. ¿Podría describirle a la Honorable Juez cuál es el proceso de esa comparación que usted realizó?

R. Una vez yo describo todas las piezas de evidencia, tanto el fragmento de proyectil como las armas de fuego, realizo unas hojas de trabajo. Obtengo los disparos de prueba de cada arma de fuego, y posterior a eso, después que todas las piezas están identificadas, están propiamente ya marcadas con su número de caso, número de piezas, y las iniciales de esta servidora; por calibre voy a realizar una comparación microscópica, que utilizando un microscopio de comparación microscópica que tenemos en la sección de armas de fuego, que tenemos microscopios para este examen, observo esas marcas presente en ese proyectil o en esos fragmentos.

P. ¿Cómo se forman esas marcas?

R. Las marcas que obtienen los proyectiles, los fragmentos o los blindajes, verdad, fragmento o blindaje dependiendo la pieza de evidencia, se obtienen al momento. Eso es como si fuera un cañón, la parte de un cañón, parte interna. Al momento de pasar, cuando ese proyectil pasa por ese cañón adquiere esas marcas. Que esas marcas son únicas para cada arma de fuego. Esas marcas el fabricante no puede determinar cómo van a ser esas marcas individuales. Él va sí a determinar la dirección y la cantidad de esa dirección, esos surcos y relieves, pero esas marcas que están dentro, que son esas líneas pequeñitas que une alrededor de ese proyectil, esas marca[s] nadie tiene control sobre ellas.

Esto quiere decir que cada arma de fuego va a tener unas marcas específicas. Que cuando yo hago una comparación de unas piezas de evidencia con los disparos que yo obtengo de esas armas de fuego, van a ser únicas en cada arma. Por eso es que yo puedo determinar qué pieza de evidencia fue disparada por equis arma de fuego en particular utilizando esas marcas que obtuve de, de esas armas en los proyectiles tanto como en los casquillos. En este caso, pues serían proyectiles porque lo que tengo es un fragmento de proyectil.

P. ¿Puede haber dos armas que creen la misma marca?

R. No.

P. Y en el examen, cuando usted examinó el proyectil, fragmento del proyectil [AF]21-1579, ¿cuál fue su conclusión en comparación con las armas que le entregaron para examinar?

R. Que el fragmento de proyectil marcado "El", fue descrito en el caso AF21-1579, fue disparado por la pistola descrita en el [*sic*] pieza 010, del caso AF21-1730.[46]

.     .     .     .     .     .     .     .

---

[46] TPO de 12 de enero de 2024, págs. 16-18; 19 líneas 1-4. El TPI dirigió preguntas a la perita en torno a las pruebas y las marcas únicas "como si fuera una huella digital" que dejan las armas al dispararse. Véase, TPO de 12 de enero de 2024, págs. 43 líneas 8-24; 55-59.

La testigo rechazó la posibilidad de que se arrojara un falso negativo o un falso positivo. La disciplina es de naturaleza subjetiva; es decir, sujeta al análisis visual.[47] Reconoció que puede haber factores externos que pueden afectar las características de un arma.[48]

En lo que concierne a las determinaciones de hechos 11, 12 y 13, apuntamos que la parte peticionaria no incluyó el testimonio de la doctora Rodríguez Castillo. La doctora Rodríguez Castillo testificó el 5 de diciembre de 2023. La patóloga realizó la autopsia PAD4883-21 de Wilson Perales Serrano y redactó un informe sobre sus hallazgos, el cual se admitió en evidencia.[49] La testigo declaró que el cuerpo del occiso estaba calcinado, con quemaduras de cuarto grado. Este tipo de quemadura implica la pérdida de las capas de la piel, la masa muscular y ligamentos, por lo que el cuerpo estaba en posición pugilística. Aun cuando permanecen los huesos, éstos se fracturan por la acción del fuego.[50] Por lo anterior, En el Informe de Protocolo de Autopsia, según se atestiguó, la patóloga determinó que la causa de la muerte fue por "violencia homicida".[51] Es decir, la declarante no identificó la presencia de proyectiles en la superficie corporal ni evidencia de heridas de armas blancas ni golpes propinados por objetos contundentes ni estrangulación.[52] No obstante, aun cuando no existía evidencia tangible, la doctora Rodríguez Castillo no descartó que el señor Wilson Perales Serrano falleciera producto de un disparo. Por el contrario, rechazó que la víctima hubiera muerto a causa del fuego.[53] Ello así porque de conformidad con el Informe Toxicológico, ante la ausencia de

---

[47] TPO de 12 de enero de 2024, págs. 30 líneas 12-25.
[48] TPO de 12 de enero de 2024, págs. 35 líneas 14-22.
[49] Grabación de la vista de 5 de diciembre de 2023, 6:00. El cuerpo de Wilson Perales Serrano se identificó el 16 de diciembre de 2021, mediante un *Rapid DNA*, comparándolo con el ADN de su progenitora; 31:00.
[50] Grabación de la vista de 5 de diciembre de 2023, 13:00.
[51] Grabación de la vista de 5 de diciembre de 2023, 19:00.
[52] Grabación de la vista de 5 de diciembre de 2023, 20:00.
[53] Grabación de la vista de 5 de diciembre de 2023, 1:00:00.

monóxido de carbono en los restos del occiso, la patóloga declaró que probablemente, "y [era] compatible" que el fuego no provocó ni contribuyó a su deceso.[54] Es decir, el señor Wilson Perales Serrano ya había fallecido cuando fue calcinado, con una probabilidad de un 99%.[55] La experta indicó que, a base de evidencia científica y otros elementos evaluadores no científicos (como información de terceros), entre la muerte y la calcinación pudieron transcurrir horas.[56] "Reciente, lo más que le puedo decir"— dijo.[57]

En esencia, en el caso del epígrafe, el peticionario menciona que ninguno de los testigos aportó evidencia directa, así como que la patóloga no especificó la causa de muerte de la víctima ni si fue producto de un disparo. Es decir, la petición del señor Pagán Mercado se reduce a que determinemos si se violó o no su debido proceso de ley y si hubo o no ausencia total de prueba en la vista preliminar en alzada para que El Pueblo de Puerto Rico procediera con la trilogía de pliegos acusatorios en su contra.

De entrada, destacamos que esta curia no cuenta con la totalidad de la transcripción de la prueba oral vertida. Como se sabe, los tribunales apelativos no debemos intervenir con la apreciación de la prueba oral cuando la parte promovente, como en este caso, **no elevó una transcripción o una exposición narrativa completa** de tal evidencia ni un alegato suplementario en el que señalara con especificidad sus contenciones. Véase, *Pueblo v. Pérez Delgado, supra*, págs. 671-674.

En cuanto a la presunta violación al debido proceso de ley al admitir prueba inadmisible, el TPI fue diáfano al acotar que el valor probatorio del testimonio de la señora Perales sería apreciado en lo que fuera pertinente. Ello así, porque no toda declaración vertida

---

[54] Grabación de la vista de 5 de diciembre de 2023, 25:00; 41:30; 1:08:30.
[55] Grabación de la vista de 5 de diciembre de 2023, 26:00; 1:09:45.
[56] Grabación de la vista de 5 de diciembre de 2023, 53:30.
[57] Grabación de la vista de 5 de diciembre de 2023, 56:45.

extrajudicialmente constituye prueba de referencia inadmisible, sino aquella que se ofrece en evidencia para probar la verdad de lo aseverado. Regla 801 (c) de las de Evidencia, 32 LPRA Ap. VI, R. 801 (c). En este caso, no se desprende de las determinaciones fácticas del TPI que ése fuera el propósito al admitir las declaraciones de la señora Perales acerca de las expresiones del occiso. Ante ello, es inmeritoria la alegación de que se infringió el debido proceso de ley del peticionario.

Debido a las carencias del expediente del señor Pagán Mercado ante nos, tampoco hemos podido evaluar ninguno de los *exhibits* de la amplia prueba documental justipreciada por el TPI, por ejemplo, documentos y fotografías del Instituto de Ciencias Forenses, el Inventario de Propiedad Ocupada con sus fotografías, entre otras piezas evidenciarias. Ciertamente, estas deficiencias impidieron que el peticionario lograra impugnar las determinaciones de hechos formuladas por el TPI; las cuales, en efecto, constatamos que se asentaron en parte de la prueba testifical vertida.

Recuérdese que, al amparo de la Regla 110 (h) de Evidencia, 32 LPRA Ap. VI, R. 110 (h),[58] nuestro modelo evidenciario reconoce que un hecho es susceptible de ser demostrado mediante prueba directa o a través de prueba indirecta o circunstancial. Es decir, no es indispensable que se presente prueba de que un testigo observó expresamente un hecho. Tampoco es requisito que la prueba circunstancial cumpla con el estándar de prueba que se exige en un juicio. *Pueblo v. Guadalupe Rivera*, 206 DPR 616, 643 (2021). En esta etapa del procedimiento criminal y ante la alegación de una

---

[58] La aludida norma probatoria establece que "[c]ualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Evidencia directa es aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual por si o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia".

supuesta ausencia total de prueba, se evalúa si se presentó o no prueba —directa o indirecta— sobre algún elemento del delito o la conexión del acusado. *Id.* Ante esa premisa fundamental, es forzoso concluir que el señor Pagán Mercado no colocó a esta curia en posición de atender sus planteamientos para intervenir con la presunción de corrección de la determinación de causa probable para acusar, según resuelta en alzada por el TPI. Decididamente, aquí no se logró satisfacer el requisito de ausencia total de prueba.

**IV.**

En atención a lo expresado, se deniega la expedición del auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones